343 So.2d 383 (1977)
William WACTOR
v.
GURTLER HEBERT CONSTRUCTION CO.
No. 8132.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1977.
Rehearing Denied March 15, 1977.
Writ Refused May 6, 1977.
*384 Reuter & Reuter, Arthur C. Reuter, Jr., New Orleans, for Gurtler, Hebert & Co., Inc., defendant-appellant.
Frank S. Bruno, New Orleans, for William Wactor, plaintiff-appellee.
Before LEMMON, STOULIG and BOUTALL, JJ.
BOUTALL, Judge.
Plaintiff William Wactor brought this action against his employer, Gurtler Hebert Construction Company, for workmen's compensation benefits for injuries received while in the course and scope of his employment with the defendant construction company. The defendant suspensively appeals the judgment of the trial court finding the plaintiff to be permanently and totally disabled, and awarding penalties and attorney's fees for defendant's failure to pay benefits.
The plaintiff was working as a pipe-fitter for the defendant at the time of the accident and it is uncontested that the accident did occur during the course and scope of the plaintiff's employment with defendant. On March 11, 1975 the plaintiff fell from a ladder into a hopper of mud, striking his right knee and chest. Within an hour of the accident, the plaintiff was taken to see Dr. Ward Turner.
Dr. Turner's report, which was forwarded to the defendant, noted contusions of the right knee and chest and effusion of the right pre-patella bursa. The plaintiff missed several days of work, then returned to work on March 15, 1975 for 3 days. Plaintiff was unable to perform his duties with the defendant because of the pain he experienced in his right knee and reported his problem to his foreman and his employer.
Subsequent visits to Dr. Turner revealed swelling and induration of the area around the right knee. On April 7, 1975 the plaintiff was discharged from Dr. Turner's care with the instruction that the plaintiff was to see an orthopedist if pain in the knee recurred. At the time of Dr. Turner's discharge there was still evidence of a hardening of the tissue over the patella.
Within a few days of the discharge from Dr. Turner the plaintiff attempted to work for Kellog Company at Shell Oil, but worked only a few days because he could *385 not climb ladders and do other aerial work which was required of him as a pipe-fitter. Following that attempt to work the plaintiff was unable to work and out of work for approximately 11 weeks. Plaintiff filed suit on June 18, 1975. At the time of the trial he was employed with another firm, S. I.P. as a pipe-fitter, although the plaintiff alleges that he can only work on the ground as a foreman rather than at a height because of his bad knee.
No action was taken by the employer until one week after this suit was filed, June 25, 1975, when the defendant had the plaintiff examined by an orthopedist, Dr. Matko Milicic. Dr. Milicic testified that he had first seen the plaintiff on June 25, 1975 and has seen him on numerous occasions since that date. Dr. Milicic found on examination that the plaintiff had tenderness over the right knee and joint and the circumference of the right thigh was slightly less than that of the left thigh. He expressed his impression as to the cause of plaintiff's complaint to be degenerative arthritis of both knees, chondramalacia of the right patella, and possible medial meniscus injury to the right knee. Dr. Milicic forwarded a copy of his report on July 15, 1975.
Dr. Milicic further testified that with the conditions found to exist in the plaintiff, the complaints of pain were to be expected and that hard work could cause such pain to occur in the injured area. He stated his belief that the accident aggravated the arthritic condition and that in line with the injury, plaintiff's complaints of pain were believable. Dr. Milicic had informed the defendant's compensation insurer of his conclusion that the accident of March 11, 1975 had aggravated the arthritic condition and that the plaintiff's pain could only be relieved by surgery to the knee. Even with that information the defendant made no effort to pay benefits to the plaintiff or to arrange for surgery for the plaintiff.
The orthopedist ended his testimony with the observation that the normal recovery period is three to six months after such an operation and that the plaintiff would be immobilized and out of work for that period. Additionally, Dr. Milicic stated the medically computed disability for an injury such as the plaintiff's to be 20% permanent disability of the lower extremity. Dr. Milicic said that although the same amount of medically computated disability would exist after the surgery as before the surgery, that plaintiff's pain would be relieved.
Plaintiff contends that because of the pain in his knee he is permanently and totally disabled from performing work in his trade as a pipe-fitter. Although there is no exact standard by which a trier of fact can rely to determine if a worker's pain is substantial and disabling, we note that the fact question depends upon the circumstances of each case. Bailey v. Schott & Company, Inc., La.App., 334 So.2d 753 (1976).
In this case the only evidence before us as to pain suffered by the plaintiff is the testimony of the plaintiff, his wife and the orthopedist. All three testified to the fact that the plaintiff was experiencing and could be expected to experience pain. No other persons were called by the plaintiff to support his claim of debilitating pain. Dr. Turner's report was stipulated into evidence. The defendant failed to enter evidence to discredit plaintiff's claim of pain that prevented him from working in his trade that required climbing or aerial labor, which are integral parts of a pipe-fitter's work.
This court has held that a compensation claimant is not entitled to compensation benefits unless the pain is substantial enough to prevent a claimant from carrying out some of the functions of his job or that the pain is so intense that it hinders the claimant in the fulfillment of his duties. Dupard v. M & C Construction Co., La., 312 So.2d 660 (1975). It is sufficient to establish disability that the normal duties of the claimant's occupation causes a worker to experience frequent, substantial pain. Miller v. Alex J. Kondroik Millwork Company, Inc., La.App., 320 So.2d 569 (1975). In light of the unrefuted testimony of the witnesses that the plaintiff was experiencing pain and *386 that it did hinder him in his work as a pipe-fitter, we can find no error on the part of the trial court in finding the plaintiff to be permanently and totally disabled.
We next consider the issue of the correctness of the trial court's determination that the action of the defendant in failing to pay benefits was arbitrary, capricious and without probable cause such as to entitle the plaintiff to penalties and attorney's fees. Such a determination is implied by the trial court's award of penalties and attorney's fees. We must rely on the record for evidence that the defendant acted in a manner that would authorize the application of LSA-R.S. 23:1201.2[1]. The defendant stipulated that the accident occurred during the course of plaintiff's employment by the defendant. Additionally, the defendant's safety engineer who was responsible for handling compensation claims, testified that he had knowledge of the accident and the plaintiff's claim of disability and also the orthopedist's reports and recommendation of surgery. We have already set out the chronology above. Nonetheless the defendant made no attempt to pay any disability benefits. When asked for an explanation by plaintiff's counsel why no benefits were paid, the safety engineer of the defendant replied, "I did not (start compensation benefits). . . I heard somewhere along the line he was working." (Tr. 66) The trial court gave no reasons for its finding that the refusal to pay benefits or make arrangements for the plaintiff to be operated on to relieve the pain was arbitrary, capricious and without probable cause. However, the record supports that finding because of the defendant's knowledge of plaintiff's physical condition, its failure to investigate the circumstances of further employment, and the corresponding failure to make any effort to compensate the plaintiff. Accordingly, we find no manifest error on the part of the trial court in making such a determination in accordance with R.S. 23:1201.2.
Defendant-appellant also raises the issue in this appeal whether the defendant company is subject to the provisions of LSA-R.S. 23:1201.2 providing the imposition of penalties and attorney's fees against employers not covered by Workmen's Compensation Insurance. Gurtler Hebert Construction Company did not raise the defense in its answer or at trial on the merits. Further, the defendant's safety engineer testified that the defendant company was self insured to the extent of the first $15,000 of workman's compensation liability. Gurtler Hebert's workman's compensation insurer (referred to only as a Chicago insurance company) would not have been liable until the benefits paid by Gurtler Hebert reached a point of $15,000 and the defendant cannot now hide behind its self-insurance arrangement for immunity from penalties and attorney's fees. Penalty provisions such as R.S. 23:1201.2 have as their basic purpose the discouragement of employers and or insurers from attitudes of indifference to the difficulties incurred by injured employees. Poindexter v. South Coast Corporation, La., 204 So.2d 615 (1967).
Defendant argues on appeal that a new trial should have been granted because of newly discovered evidence. Defendant points out that the plaintiff failed to undergo corrective surgery after trial even though plaintiff claimed under oath that he was willing to do so when arrangements were made. We note that the judgment of the trial court ordered the defendant to make all necessary arrangements for the *387 knee surgery. The defendant made the arrangements for surgery but refused to pay any disability benefits, so we can find no importance in the statement that plaintiff refused to undergo surgery.
The final issue raised in this appeal is the appropriateness of the award of attorney's fees by the trial court. The trial court awarded attorney's fees in the amount of $5,000. The defendant points out that while the skill and ability of plaintiff's counsel are unquestioned, the award of that amount is beyond being reasonable and is in fact punitive in nature, exceeding maximum statutory attorney's fees allowed by LSA-R.S. 23:1141[2].
We disagree with defendant-appellant's contention that based on the short length of the trial, the major facts being stipulated, and the few witnesses whose testimony was taken, the award of $5,000 attorney's fees is excessive and should be reduced.
The penalty attorney's fee is fixed and determined upon the basis of the attorney's skill and the amount of work performed by him in the prosecution and collection of the total claim. Jackson v. Phoenix Insurance Company, La.App., 252 So.2d 511 (1971); Redding v. Cade, La.App., 158 So.2d 880 (1963). Other factors to be considered in determining the attorney's fee is the amount involved and the amount of work necessarily undertaken by the attorney. Ray v. Superior Iron Works and Supply Co., Inc., La.App., 284 So.2d 140 (1973). The maximum attorney's fee provided by the compensation act itself is not a determining factor in the amount of penalty attorney's fees to be assessed. Cain v. Employers Casualty Company, 236 La. 1085, 110 So.2d 108 (1959).
In determining the reasonableness of attorney's fees the trial court has much discretion. While the amount awarded is more than that awarded in previous comparable cases, we cannot substitute our opinion for that of the trial judge. An appellate court must find that the trial judge has abused the `much discretion' accorded him in order to modify the award. Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971). We can find no manifest error in the amount of attorney's fees awarded. Accordingly,
The judgment appealed is affirmed.
AFFIRMED.
STOULIG, J., dissents in part.
STOULIG, Judge, dissenting in part.
I respectfully dissent in part from that portion of the majority view which affirms the award of $5,000, for attorney fees. In my opinion this amount is excessive for the services rendered and therefore constitutes an abuse of the trial court's discretion.
A review of the record reflects the following activity by plaintiff's counsel: (1) the filing of the petition some three months after the accident and slightly more than 30 days after claimant was discharged by his treating physician; (2) request for an issuance of a subpoena duces tecum to the employer for his file on plaintiff's accident; (3) a pre-trial conference on January 2, 1976; (4) a notice of deposition of plaintiff by defendant and apparently the taking of the deposition; (5) a written stipulation that the medical report of Dr. Turner would be received in evidence in lieu of his appearance in court; (6) trial on its merits, which according to the uncontradicted statement of appellant's counsel lasted less than two hours and which consisted of four witnesses (plaintiff, one doctor, and two lay witnesses) and resulted in a transcript of 71 pages of testimony (31 medical and 37 lay); (7) appearance at the hearing on a motion for a new trial and memorandum submitted in opposition thereto; and (8) this appeal.
In addition to the foregoing it must be assumed that there were the customary conferences between the attorney and client which led to the filing of the petition and the other activities normally associated *388 with the trial of a compensation claim. It is to be noted that the occurrence of the accident during the course and in the scope of employment covered by the compensation statute, plaintiff's rate of pay, and the medical report of Dr. Turner in lieu of his appearance were stipulated. There were no countervailing medical reports or testimony presented by defendant. The skill and dispatch with which plaintiff's attorney handled this claim is acknowledged and unquestioned.
From the foregoing it is obvious that the pursuit of plaintiff's claim to its ultimate conclusion was not very time consuming in its factual, medical, and legal development. In my opinion the assessment of the attorney fees under R.S. 23:1201.2 should be based upon an evaluation of the skill of the attorney, the time involved, the degree of difficulty, and the result achieved. The burden rests with the attorney to present to the trial judge evidence of the extenuating circumstances not normally encountered in the trial of a compensation claim which required him to devote an unusual amount of time in pursuit of his client's claim and for which he should be additionally compensated. In the absence of such evidence, though not controlling, statutory limitations specified in R.S. 23:1141 should be used as a persuasive guideline in the setting of attorney fees under Section 1201.2 as being the legislative expression of a reasonable attorney fee in compensation cases.
In my opinion the record as presented to this court and taking into consideration those factors which are normally attendant with this type of litigation, I am of the opinion that the award of $5,000 attorney fees for the services rendered in this matter constitutes an abuse of the trial court's discretion and to the extent that they are excessive, they are punitive.
NOTES
[1] R.S. 23:1201.2(A) says, in part: ". . . Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of the claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim. . . The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply in cases wherein the employer is found liable for penalties and attorney's fees under the provisions of this Section." * * *
[2] R.S. 23 § 1141 says in part * * * "in no case shall the fees of an attorney who renders services for an employee coming under the provisions of this Chapter exceed twenty per centum of the first $5,000 of any award and 10% of the part of any award over $5,000.00."