445 So.2d 183 (1984)
Jimmy W. CLARK, Plaintiff-Appellee,
v.
PERNIE BAILEY DRILLING COMPANY, et al., Defendants-Appellants.
No. 83-853.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
*184 Mouton, Roy, Carmouche & Bivins, William H. Goforth and John A. Bivins, Lafayette, for defendants-appellants.
Kevin P. Monahan and Raymond Charles Vinet, Baton Rouge, for plaintiff-appellee.
Before FORET, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This is a worker's compensation case. The plaintiff, Jimmy Clark, seeks benefits for total and permanent disability, together with penalties and attorney's fees. Defendants are the plaintiff's former employer, Pernie Bailey Drilling Company, and its worker's compensation insurer, Mid-Continent Underwriters, Inc. The trial court found plaintiff partially disabled under the provisions of LSA-R.S. 23:1221(3) and awarded benefits at the rate of $148 per week for a period not to exceed 450 weeks subject to a credit for sums already paid. The trial court rejected plaintiff's claim for penalties and attorney's fees.
*185 Only the defendants have appealed. They contend the trial court erred in three respects: (1) finding the plaintiff partially disabled; (2) admitting into evidence the deposition of Dr. Tassin over their objection; and (3) assessing a fee for the deposition of Dr. Tassin. We affirm the finding of partial disability. We find it was error to admit the deposition of Dr. Tassin but the error was of no consequence. We find certain cost items relating to Dr. Tassin's deposition were improperly taxed, and we will amend the judgment to make the necessary corrections. We will discuss these issues in the order presented after first outlining the basic facts:
Facts
On July 10, 1980, while in the course and scope of his employment as a roughneck for Pernie Bailey Drilling Company, plaintiff sustained injuries on an oil rig when the lead tongs he was operating snapped loose causing a chain to strike him resulting in injuries to his left leg, head, neck and lower back. At trial the parties stipulated that if a co-worker had been called to testify he would testify that he was present and saw the accident.
After the accident plaintiff was taken to Dr. Looney in Lake Charles where he was examined and an X ray of his leg was taken. He was seen by Dr. Looney four times.
He next consulted his family physician, Dr. A. John Tassin. He saw him on thirty-eight different occasions beginning August 1, 1980. The last visit prior to trial was on February 23, 1983. Plaintiff was still under Dr. Tassin's care at the time of trial, March 9, 1983.
On the initial visit plaintiff complained of pain in his neck and low back. Dr. Tassin observed spasm of the lumbar musculature and a hematoma in his left leg. His initial impression was muscle and ligament injuries to the neck and lower back with direct injury to the left leg. On the subsequent visits plaintiff complained mainly of pain in his low back radiating to the left leg. Dr. Tassin testified that plaintiff's pain was consistent and that the degree of pain was moderate but quite severe at times. Dr. Tassin has noticed weakness and some numbness in the left lower extremity. In his opinion the accident caused the disability and plaintiff is permanently disabled from doing heavy manual labor.
The plaintiff made five visits to Dr. James R. LaFleur, an orthopedic surgeon. His initial visit was on August 4, 1980, and his last visit was January 6, 1981. Dr. LaFleur's initial impression was a cervical and lumbar myofascial strain with L-5 root neuropraxia secondary to muscle spasm. He caused a myelogram to be performed which was normal. The doctor found no impairment to the plaintiff's low back on the last visit. He stated that when he released the plaintiff, he could have returned to light duty.
Dr. Tassin referred the plaintiff to Dr. Charles R. Billings, an orthopedic surgeon. Plaintiff complained to this doctor of low back pain with pain radiating into the left leg. Dr. Billings' initial impression was post-traumatic degenerative disc disease with segmental instability. Both the straight leg raising test and the bilateral active straight leg raising test produced pain in the low back region. After five subsequent visits with no significant change in plaintiff's condition, a lumbar myelogram was performed on December 14, 1981, with no abnormal findings. On December 16, 1981, a discogram was performed revealing an abnormal L4-5 disc. On the September 27, 1982, visit the doctor noted an exacerbation of plaintiff's symptoms (increased back pain radiating into his left extremity). Plaintiff's last examination by Dr. Billings prior to trial was on January 24, 1983. Dr. Billings assessed a thirty per cent physical impairment to the plaintiff's back due to the related loss of motion in the lumbar spine and pain. Dr. Billings felt that heavy manual labor would probably reproduce plaintiff's symptoms and that plaintiff was incapable of performing heavy manual labor due to his condition. The doctor stated that the plaintiff should be restricted in his activities from lifting weights greater than 50 to 100 *186 pounds, repetitive bending or stooping, and prolonged sitting or standing.
On October 14, 1981, plaintiff was examined by Dr. James C. McDaniel, an orthopedic surgeon, for consultation and diagnosis for litigation purposes only. The doctor found no abnormal findings which could be related to the July 1980 accident and felt the plaintiff was "over-exaggerating" his symptoms.
On February 23, 1983, plaintiff was examined by Dr. T.E. Banks, an orthopedic surgeon appointed by the court. This doctor also felt the plaintiff was exaggerating his symptoms and felt the residual effects of the injury in 1983 were minimal. The doctor stated that he reviewed the material obtained from the December 1981 discogram and opined that if the discogram was performed properly the plaintiff possibly did have a bulging of the disc in that area.
The trial court in his written reasons for judgment found that the plaintiff was experiencing substantial pain and that he was no longer able to perform his former duties of employment and held that the plaintiff was partially disabled.
Issue No. 1
The evidence preponderates in favor of the trial court's determination that the plaintiff is partially disabled under LSA-R.S. 23:1221(3).
As this court stated in Bernard v. Merit Drilling Company, 434 So.2d 1282 (La.App. 3rd Cir.1983):
[5-8] A worker is partially disabled under LSA-R.S. 23:1221(3) when he cannot perform the duties required by his former employment but can still do other work. Scott v. Sears, Roebuck & Company, 406 So.2d 701 (La.App. 3rd Cir. 1981). Partial disability also includes the situation where a workman would experience substantial pain when working in his former occupation, but where he could perform other work without experiencing such pain. McBroom v. Argonaut Insurance Company, 370 So.2d 212 (La.App. 3rd Cir.1979), writ denied, 371 So.2d 1342 (La.1979).
In the present case the testimony of Dr. Tassin reveals that plaintiff's condition rendered him permanently disabled from doing heavy manual labor, and that his condition was caused by the accident. The deposition of Dr. Billings revealed that because of plaintiff's abnormal L4-5 disc and other physical findings heavy manual labor would probably reproduce plaintiff's symptoms and that therefore plaintiff was incapable of performing that type of duty. The doctor further testified that plaintiff should be restricted in his activities. He should avoid lifting weights greater than 50-100 pounds, repetitive bending or stooping, and prolonged sitting or standing, but with these modifications the plaintiff should be employable.
As the Supreme Court stated in Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982):
... Such diagnosis and the opinions of the treating physician and specialist to whom referred by the treating physician are entitled to more weight than that of those doctors examining the plaintiff for consultation for litigation purposes only. Williams v. Liberty Mutual Ins. Co., 327 So.2d 462 (La.App. 3d Cir.1976); Babin v. Highlands Ins. Co., 290 So.2d 720 (La.App. 1st Cir.1974); Gates v. Ashy Construction Co., Inc., 171 So.2d 742 (La.App. 3d Cir.), writ denied 247 La. 678, 173 So.2d 542 (1965); Harris v. Argonaut Ins. Co., 142 So.2d 501 (La.App. 2d Cir.1962).
In the present case we find the diagnosis and opinions of the treating physician (Dr. Tassin) and the treating specialist (Dr. Billings) are entitled to more weight than that of those doctors examining the plaintiff for diagnosis and for consultation for litigation purposes only.
We also find that the plaintiff is incapable of performing the duties required by his former employment. In addition to the medical experts Leonard Francois, the defendants' vocational expert, testified that plaintiff's former duties as an offshore worker consisted of heavy manual labor, *187 but that his analysis of the record indicated plaintiff could only perform jobs requiring light or medium work. For the above reasons we find the plaintiff to be partially disabled within the meaning of LSA-R.S. 23:1221(3).
Issue No. 2
Defendants argue that the trial court erred in permitting plaintiff to introduce over their objection the deposition of Dr. Tassin since Dr. Tassin had testified live at trial and no basis existed for the introduction of the deposition under LSA-C.C.P. art. 1450. This argument has merit. We find no evidence in the record which would render the deposition admissible under article 1450. Therefore, we agree with defendants that the deposition should have been excluded from evidence.
Its inclusion in the record, however, and even its consideration by the court in our opinion could not have affected the outcome of this case. There is no real difference in Dr. Tassin's deposition and his trial testimony. About the most that can be said concerning the difference is that the deposition was more detailed.
Issue No. 3
The trial court assessed defendant with the cost of Dr. Tassin's deposition. Since this deposition was improperly admitted and should have been excluded, it follows that the cost of the deposition was not taxable. The cost of a discovery deposition not used at the trial may not be charged as costs. LSA-R.S. 13:4533; Succession of Franz, 242 La. 875, 139 So.2d 216 (1962); Parish v. Bill Watson Ford, Inc., 354 So.2d 727 (La.App. 4th Cir.1978), writ denied 356 So.2d 1005 (La.1978).
Likewise, a fee should not have been awarded Dr. Tassin for the deposition. In United Gas Pipeline Company v. Singleton, 241 So.2d 93 (La.App. 3rd Cir.1970), writs denied 242 So.2d 578 and 579 (La. 1971), this court determined that a fee awarded an expert appraiser for the taking of a deposition excluded from evidence must be disallowed. In that case the appraiser also testified at trial and the trial court properly sustained plaintiff's objection to the filing of the deposition.
In the present case the trial court awarded Dr. Tassin a total fee of $350 for his testimony by deposition and at the trial on the merits. The court fixed the expert witness fee of Dr. Billings at $250 for a deposition taken for trial purposes. We will decrease Dr. Tassin's expert witness fee to $250.
For the above reasons the judgment of the trial court is amended so as to eliminate the cost of the deposition of Dr. Tassin as an item of costs, and also to decrease Dr. Tassin's expert witness fee to $250. In all other respects the judgment is affirmed. All costs of this appeal are to be borne by the defendants-appellants.
AMENDED and AFFIRMED.